## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

YEVHENII MALETS,            )
                            )
        Petitioner,         )
                            )
v.                          )       Case No. 4:20-cv-01041-MHH-SGC
                            )
JONATHAN HORTON, et al.,    )
                            )
        Respondents.        )

## MEMORANDUM OPINION

The Magistrate Judge has entered a report in which she recommended that the Court grant the petition for *habeas corpus* relief filed through counsel by Yevhenii Malets pursuant to 28 U.S.C. § 2241. The Magistrate Judge concluded that Mr. Malets should be provided an individualized bond hearing before an Immigration Judge within 30 days. (Doc. 17). Mr. Malets and the respondents filed timely objections to the report. (Docs. 18, 19).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72. A district court's obligation to "'make a de novo *determination* of those portions of the

report or specified proposed findings or recommendations to which objection is made,'" 447 U.S. at 673 (quoting 28 U.S.C. § 636(b)(1)), requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party,'" 447 U.S. at 675 (quoting House Report No. 94-1609, p. 3 (1976)). *United States v. Raddatz*, 447 U.S. 667 (1980) (emphasis in *Raddatz*).

The parties do not challenge the Magistrate Judge's factual findings. The Court repeats them here to provide context for the discussion that follows:

> Petitioner, a citizen of Ukraine currently detained at the Etowah County Detention Center in Gadsden, Alabama, has been in the custody of Immigration and Customs Enforcement ("ICE") since June 26, 2018. (*Id*. at 2). Although Ukrainian, the petitioner entered the United States in October 2014 under a different name and on a Hungarian passport, pursuant to the Visa Waiver Program ("VWP").[1] (Doc. 12-2 at 1). That waiver expired on January 5, 2015. (*Id*.).
>
> The petitioner timely filed an application for asylum and withholding of removal; in the application, the petitioner disclosed his use of a false

---

[1] Under the VWP, aliens from certain countries, including Hungary, may visit the United States for 90 days or less without a visa. *See Kanacevic* [*v. INS*], 448 F.3d 129, 133 (2d Cir. 2006) (citing 8 U.S.C. § 1187(a) (2000 and Supp. II 2002); 8 C.F.R. § 217.2 (2006)). Aliens admitted under this program forfeit any right to challenge their removal, except that they may apply for asylum. *Id.*; *see also Ferry v. Gonzales*, 457 F.3d 1117, 1126 (10th Cir. 2006) (citing *Handa v. Clark*, 401 F.3d 1129, 1135 (9th Cir. 2005) ("Congress required a VWP applicant to sign a waiver of rights to 'assure that the alien will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays.' That waiver of rights . . . waives 'any right to contest, other than on the basis of an application for asylum, any action for removal of the alien.'") (citation omitted; alterations incorporated)); 8 U.S.C. § 1187(b)(2); 8 C.F.R. § 217.4(a) (2006). Participants who apply for asylum are processed in "asylum-only" proceedings. *See Nreka v. U.S. Atty Gen.*, 408 F.3d 1361, 1363-64 (11th Cir. 2005) (citing 8 C.F.R. §§ 217.4, 208.2(c)). Unless granted asylum, a VWP applicant can be removed without further proceedings. 8 C.F.R. § 217.4(a)(1) (2006).

name on the Hungarian passport.[2]  (Doc. 9 at 6).  In August 2017, ICE learned a Hungarian court had issued a warrant for the petitioner, charging him with passport fraud and abuse of official duty.  (Doc. 12-2 at 1).  When the petitioner appeared for his asylum interview on June 26, 2018, ICE arrested him.  (*Id.* at 2).  In July 2018, an Immigration Judge ("IJ") determined he lacked jurisdiction to consider the petitioner's bond application; the IJ denied bond on that basis.[3]  (Doc. 12-4).

On February 11, 2019, the IJ denied the petitioner's applications seeking asylum, withholding of removal, and deferral of removal, and ordered the petitioner removed to Ukraine.  (Doc. 12-3 at 14).  On December 12, 2019, the BIA denied the petitioner's appeal.  *Matter of Y-I-M-*, 27 I. & N. Dec. 724 (BIA 2019) (submitted as Doc. 12-5).  On December 18, 2019, the petitioner filed a petition for review of the BIA's decision in the Second Circuit Court of Appeals; the following

---

[2] The Eleventh Circuit has specifically held the use of a false passport to gain entry into the United States "cannot in and of [itself] be used as the basis to deny asylum. *Nreka*, 408 F.3d at 1368 ("there may be reasons, fully consistent with the claim of asylum, that will cause a person to possess fake documents, such as the creation and use of a false document to escape persecution by facilitating travel").

[3] Although the IJ denied the petitioner's bond application based on lack of jurisdiction with no further explanation, other IJs have relied on *Matter of A-W-*, 25 I. & N. Dec. 45 (BIA 2009).  In that decision, the Board of Immigration Appeals ("BIA") determined, because the detention of applicants under the VWP arises pursuant to 8 U.S.C. § 1187(c)(2)(E)—not 8 U.S.C. § 1226—and because the detention authority under the Homeland Security Act of 2002 resides in the Secretary of Homeland Security rather than the Attorney General, the Attorney General has no authority to delegate to an IJ.  *Id.*  The BIA reasoned:

> According to 8 C.F.R. § 1208.2(c)(1)(iv), Immigration Judges have exclusive jurisdiction over asylum applications filed by aliens who have been admitted pursuant to the Visa Waiver Program.  However, 8 C.F.R. § 1208.2(c)(3)(i) provides that the Immigration Judge's scope of review under that section is "limited to a determination of whether the alien is eligible for asylum . . . and whether asylum shall be granted in the exercise of discretion."  The regulation further states that "[d]uring such proceedings, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief."  *Id.*

*Id.* at 46 n.1.

day he filed a motion for stay of removal.  (Doc. 12 at 4).  The petition and the motion for stay remain pending with that court.[4]  (Doc. 9 at 8).  Pursuant to the longstanding forbearance agreement in the Second Circuit, removal efforts have been halted.[5]  (Doc. 12-2 at 2).  In his petition for review, the petitioner contends the BIA's decision contravenes Second Circuit precedent.  (Doc. 9 at 7).

In the instant petition, the petitioner asserts his detention without a bond hearing since June 26, 2018, violates due process and 8 U.S.C. § 1226.  (Doc. 9 at 2-3, 9-10, 13).  The respondents argue the detention of aliens admitted under the VWP is governed by 8 U.S.C. § 1187(c)(2)(E), not § 1226.[6]  (Doc. 12 at 7).

---

[4] *See Malets v. Barr*, Appeal No. 19-4216 (2nd Cir. Dec. 18, 2019).  This court may take judicial notice of its own records and the records of other federal courts. *United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999); *see* FED. R. EVID. 201(b).

[5] *See, e.g., Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d Cir. 2014) ("While a petition [for review of a BIA decision] is pending in this Court, the Government's forbearance policy assures that the filing of a motion to stay removal, as has been done here, will suffice to prevent removal.").

[6] In *Matter of A-W-*, the BIA ruled that VWP aliens are not subject to detention under § 1226, but are instead detained pursuant to 8 U.S.C. § 1187(c)(2)(E). *Id.,* 25 I. & N. Dec. at 47-48.  A district court noted this determination was made "[w]ithout detailed explanation" and "merely by noting that the authority to grant bond to aliens 'detained' pursuant to § 1187 no longer belonged to the Attorney General, and thus had not been delegated to the immigration judges who derived their authority from a delegation from the Attorney General." *Gjergj G. v. Edwards*, 2019 WL 1254561, at *2 (D.N.J. Mar. 18, 2019) (citing *Szentkiralyi v. Ahrendt,* 2017 WL 3477739, at *2 (D.N.J. Aug. 14, 2017)).  Perhaps the biggest roadblock to the government's claim that § 1187(c)(2)(E) provides detention authority is the code section's failure to mention detention at all.  Rather, § 1187 lists requirements for VWP participants and countries to be designated as eligible. Including the relevant headings, the subsection reads in full:

**(c)  Designation of program countries**

**(2) Qualifications**

Except as provided in subsection (f), a country may not be designated as a program country unless the following requirements are met:

**(E) Repatriation of aliens**

(Doc. 17 at 1-4) (footnote numbers adjusted to formatting of this opinion).[7]

Ultimately, the Magistrate Judge found that she did not have to determine the statutory basis for detention because "the government's failure to provide the petitioner a bond hearing violates his due process rights." (Doc. 17, p. 14). In their objection, the respondents argue that the Magistrate Judge erred by not deciding the basis for statutory detention because "that determination is critical to the question of Petitioner's statutory entitlement to a bond hearing." (Doc. 18, p. 9). According to the respondents, Mr. Malets is detained pursuant to § 1231(a)(6) because he is subject to a final order of removal. The respondents argue that if they are correct, then pendency of Mr. Malets's petition for review before the Second Circuit Court of Appeals dictates the length of his detention. (Doc. 18, pp. 9, 11). Mr. Malets contends that while the Magistrate Judge correctly concluded that he is entitled to a bond hearing, he is detained under 8 U.S.C. § 1226(a), not § 1231(a)(6). (Doc. 19,

---

The government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

8 U.S.C. § 1887(c)(2)(E).

[7] The Immigration Judge's February 11, 2019 order denying Mr. Malets's applications for asylum, withholding of removal, and deferral of removal constitutes "a final order of removal" for purposes of appellate court jurisdiction. *Nreka*, 408 F.3d at 1367.

p. 2).   The respondents acknowledge that if Mr. Malets is detained under § 1226(a), then he is statutorily entitled to a bond hearing.   (Doc. 18, p. 9).   The Eleventh Circuit Court of Appeals' recent decision in *Farah v. U.S. Atty. Gen'l* dictates that as between § 1226(a) and § 1231(a)(6), § 1226(a) supplies the statutory basis for Mr. Malets's detention at the current stage of his removal proceedings.   No. 19-12462, 2021 WL 4085755 (11th Cir. Sept. 8, 2021).[8]

---

[8]  In their summary judgment brief, the respondents argued that ICE initially detained Mr. Malets pursuant to 8 U.S.C. § 1187(c)(2)(E).   (Doc. 12, p. 7).   The respondents contend that the statutory basis for detention changed to § 1231 when an immigration judge issued an order for Mr. Malets's removal.   The Court disagrees with the proposition that Mr. Malets initially was detained pursuant to § 1187.

As noted above, § 1187 provides eligibility requirements for VWP participants and countries.   As the Magistrate Judge explained, 8 U.S.C. § 1187(c)(2)(E) does not mention detention.   As one court recently found:

> the VWP statute does not itself provide for detention of VWP aliens, and [] the detention of an alien in asylum proceedings must instead arise from one of the other statutory provisions expressly authorizing the detention of aliens during removal proceedings …. While the respondent contends that § 1226(a) cannot apply because Romance is not currently detained pending *removal proceedings* that commenced with a Notice to Appear, that section is the only one that appears would otherwise be applicable to an alien such as this petitioner who remains in asylum proceedings and has not committed an applicable crime.

*Romance v. Warden York Cty. Prison*, 2020 WL 6054933, *4 (M.D. Pa. July 28, 2020) (emphasis in *Romance*) (citations omitted), *report and recommendation adopted*, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020); *see also Hodge v. Barr*, 2020 WL 210063, *4 (W.D.N.Y. Jan. 14, 2020) (recognizing that the statutory basis for detention of individuals whose VWP status expired "is an unsettled question").

Because Mr. Malets acknowledges that he used false documentation to enter the United States, he may be in a different posture from the detainee in *Romance*.   The use of false documentation seems to render Mr. Malets inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.").   However, the use of false documentation is not a

By way of background, § 1226 governs detention of aliens "pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (explaining that "Section 1226 generally governs the process of arresting and detaining" deportable aliens "pending their removal").  In other words, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings."  138 S. Ct. at 838; *see also Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018) ("Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable.").[9]  In *Jennings*, the Supreme Court explained that detention during removal proceedings "gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."  138 S. Ct. at

---

crime of moral turpitude that would render Mr. Malets subject to mandatory detention under § 1226(c).  *Pierre v. U.S. Attorney General*, 879 F.3d 1241 (11th Cir. 2018) ("[T]he term 'moral turpitude' is not defined in the INA. See *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013). This Court has concluded that moral turpitude 'involves an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' *Id.* (quotations and alteration omitted). 'Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct.' *Sosa–Martinez v. U.S. Att'y Gen.*, 420 F.3d 1338, 1341–42 (11th Cir. 2005) (quotations omitted)."); *Nreka*, 408 F.3d at 1368 ("[T]here may be reasons, fully consistent with the claim of asylum, that will cause a person to possess fake documents, such as the creation and use of a false document to escape persecution by facilitating travel[.]").

[9]  The respondents acknowledge as much, stating in their objection:  "For aliens who were initially admitted to the United States, 8 U.S.C. § 1226 'generally governs the process of arresting and detaining . . . aliens pending their removal.'"  (Doc. 18, p. 2) (citing *Jennings*, 138 S. Ct. at 837).

836.[10]  Section 1231, on the other hand, establishes a 90-day removal period "when an alien is ordered removed" from the United States.  8 U.S.C. § 1231.  Section 1231 gives the Attorney General 90 days "to complete removal" once the Attorney General is authorized to remove an alien and mandates, under § 1231(a)(2), that an alien "must be detained during that [90-day] period."  138 S. Ct. at 843.

In *Farah*, the Eleventh Circuit explained:  "When an alien receives a removal order," the 90-day removal period "begins on the latest of three dates:  '[t]he date the order of removal becomes administratively final'; '[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order'; and '[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.'"   *Farah*, 2021 WL 4085755 at *12 (quoting 8 U.S.C. § 1231(a)(1)(B)).  An alien's removal order becomes administratively final when the Board of Immigration Appeals dismisses an alien's appeal of an Immigration

---

[10]  *Jennings* concerns two types of detention:  detention while an alien applies for admission to the United States and detention during removal proceedings, including appeals.  The former is governed by 8 U.S.C. § 1225 and the latter by 8 U.S.C. § 1226.  *Jennings*, 138 S. Ct. at 837.  The government did not detain Mr. Malets when he sought admission through his asylum proceedings in 2015.  (Doc. 12-3, p. 1).  ICE arrested Mr. Malets in 2018 after ICE received notice of an active 2016 warrant for Mr. Malets's arrest from a Hungarian court.  (Doc. 12-2, p. 1, ¶ 6).  After his arrest on the warrant, Mr. Malets was deemed removable, and removal efforts began.  (Doc. 12-2, p. 2, ¶ 7).

Judge's decision regarding removal.  8 U.S.C. § 1231(a)(1)(B)(i).[11]  But if the alien later seeks judicial review of the BIA decision, and the appellate court orders a stay of removal pending resolution of the appeal, then detention under § 1231(a)(2) for the 90-day removal period does not begin until "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii).  "[B]ecause section 1231(a) authorizes the government to detain an alien '[d]uring' and 'beyond' but not before the [90-day] removal period," an alien's detention before the removal period begins "cannot be governed by section 1231(a)."  *Farah*, 2021 WL 4085755 at *12; *see also id.* ("We hold that section 1231(a) does not govern the detention of an alien whose removal has been stayed pending a final order from the reviewing court.").  Until the federal court reviewing the administrative order of removal issues its final order, the alien's detention is governed by section 1226.  *Farah*, 2021 WL 4085755 at *12.[12]

---

[11]  An alien may choose not to appeal an Immigration Judge's decision.  When that happens, "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the [Immigration and Nationality] Act" becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time."  8 C.F.R. § 1241.1(c); *De La Teja v. United States*, 321 F.3d 1357, 1360, 1362–63 (11th Cir. 2003).

[12]  Mr. Rodriguez, the detainee in *Jennings*, was in a procedural posture like Mr. Farah's.  The Government had detained him pursuant to § 1226 during removal proceedings.  Then,

> an Immigration Judge ordered Rodriguez deported to Mexico. Rodriguez chose to appeal that decision to the Board of Immigration Appeals, but five months later the Board agreed that Rodriguez was subject to mandatory removal. Once again, Rodriguez chose to seek further review, this time petitioning the Court of Appeals for the Ninth Circuit for review of the Board's decision.

> In May 2007, while Rodriguez was still litigating his removal in the Court of Appeals, he filed a habeas petition in the District Court for the Central District of

Here, as discussed above, ICE arrested Mr. Malets in June of 2018 and detained him.   In February of 2019, an Immigration Judge denied Mr. Malets's request for asylum and ordered his removal to Ukraine, and on December 12, 2019, the Board of Immigration Appeals denied Mr. Malets's challenge to the Immigration Judge's decision.   On December 18, 2019, Mr. Malets filed a petition for review in the Second Circuit Court of Appeals, and on December 19, 2019, he filed a motion to stay in the Court of Appeals.   While his request for review has been pending in the Second Circuit, Mr. Malets's removal has been suspended by a forbearance stay, a stay by circuit policy.[13]   While the forbearance stay was in place, Mr. Malets filed

---

California, alleging that he was entitled to a bond hearing to determine whether his continued detention was justified.

*Jennings*, 138 S. Ct. at 838.   Throughout, the Supreme Court regarded Mr. Rodriguez as detained pursuant to § 1226(c) because he was in the process of challenging his removal order and thus not subject to a final order of removal.

[13]   "In 2012, [the Department of Homeland Security] and the Second Circuit entered into a forbearance agreement wherein the Government 'has assured that removal will not occur' while the detainee has a petition for review pending before the Second Circuit. *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012). The overwhelming majority of courts in this Circuit have found that the forbearance agreement amounts to a 'court order[ed] stay of the removal of the alien' and that detainees with a pending petition for review and motion to stay are not detained pursuant to § 1231. *See Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (collecting cases); *see, e.g.*, *Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5 & n.4 (S.D.N.Y. July 2, 2019) ('[B]ecause of the government's forbearance policy, an alien who files a PFR and a stay motion in the Second Circuit obtains "the functional equivalent of a stay order," such that § 1231 no longer governs his detention and he "may not be denied a bond hearing on that basis."' (collecting S.D.N.Y. cases))."   *Vides v. Wolf*, 2020 WL 3969368, *6 (W.D.N.Y. 2020) (appeal pending).   "[P]ursuant to the forbearance agreement, the Government may engage in removal after providing a 21-day notice" to the Second Circuit Court of Appeals, *Vides*, 2020 WL 3969368, *6, during which period the Second Circuit may grant a pending motion to stay, *Yusuf*, 2019 WL 4198798, at *3.

his habeas action.  (Doc. 1).  Under *Farah*, as of December 19, 2019, Mr. Malets is detained pursuant to § 1226(a) pending judicial review of his removal order.[14]

Based on the foregoing, the Court sustains Mr. Malets's objection and finds that he currently is detained pursuant to § 1226(a).  The Court overrules the respondents' objection.  Based on the respondents' concession, Mr. Malets is entitled to a bond hearing under § 1226(a).[15]

The respondents also object to the magistrate judge's recommendation that, outside of the statutory scheme, due process concerns dictate that Mr. Malets be given an individualized bond hearing before an Immigration Judge.  That objection is moot.[16]

After consideration of the materials in the electronic record, including the report and recommendation and the parties' objections, the Court adopts the Magistrate Judge's factual findings and her analysis to the extent that it is consistent

---

[14]  In *Farah*, the Eleventh Circuit stated that during the window of time between a BIA decision and a stay of that decision pending appeal, a detainee is held pursuant to § 1231.  *Farah*, 2021 WL 4085755 at *12 ("To be sure, Farah's detention *was* governed by section 1231(a) for the brief period between when the Board issued its decision and when we stayed Farah's removal. But once we ordered the stay, the removal period reset, and it will not begin again until we issue our final order with respect to his immigration.") (emphasis in *Farah*).

[15]  The Court expresses no opinion as to Mr. Malets's eligibility for release on bond.

[16]  The Court agrees with the principle articulated by the Magistrate Judge that due process requires a bond hearing for a petitioner detained for nearly three years.  *See, e.g.*, *Brito v. Barr*, 419 F. Supp. 3d 258, 266 (D. Mass. 2019) ("In cases where a non-criminal alien will be deprived of liberty, due process requires the Government prove detention is necessary.") (citing *Foucha v. Louisiana*, 504 U.S. 71, 81-82 (1992); *Addington v. Texas*, 441 U.S. 418, 427 (1979)).  The Court may not resolve that issue on the merits because the issue is moot.  *De La Teja*, 321 F.3d at 1363.

with this opinion.  By separate order, the Court will grant Mr. Malets's petition for habeas corpus relief and order that Mr. Malets receive an individualized bond hearing before a neutral Immigration Judge within 30 days from the entry date of the order.

The Court denies Mr. Malets's motion for oral argument, (Doc. 15).

**DONE** and **ORDERED** this September 15, 2021.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE